**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carlos Rafael Mendoza, | No. CV-18-00347-TUC-FRZ (EJM) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| v. | |
| David Shinn, et al., | |
| Respondents. | |

Petitioner Carlos Rafael Mendoza filed a pro se Petition for a Writ of Habeas Corpus ("PWHC") pursuant to 28 U.S.C. § 2254 on July 16, 2018. (Doc. 1).[1] Petitioner raises four grounds for relief: (1) prosecutorial misconduct and due process violations because the State cremated the victim before trial in violation of state law, denying Petitioner the opportunity to examine the corpse, and acted in bad faith by intentionally concealing the cremation; (2) ineffective assistance of trial and appellate counsel, and the state courts erred by finding no due process violations and that the disclosure violations were harmless error;[2] (3) the State's failure to timely disclose DNA evidence until the first day of trial was bad faith, and sentencing errors were made when unproven priors were used to enhance

---

[1] Pursuant to the prison mailbox rule, the Court assumes that Petitioner deposited his PWHC in the prison mailing system on the date indicated by Petitioner's signature on his Petition. In order to give Petitioner the benefit of the earliest date calculations, the Court makes this same assumption for all other documents filed by Petitioner and included in the record for the present matter.

[2] Petitioner states that the main issue for habeas review is the cremation, but ineffective assistance of counsel ("IAC") is part of a series of mistakes that deprived Petitioner of due process.

Petitioner's sentence, in violation of *Blakely* and *Apprendi*;[3] and (4) the jury was tainted when an excused juror made a disparaging comment overheard by other jurors, and Petitioner was denied his right to be judged by a jury of his peers because half of the jury was comprised of law enforcement and members of the judiciary or their family members.

Respondents filed an Answer contending that the PWHC is untimely, and further that all of Petitioner's claims are procedurally defaulted without excuse. (Doc. 15). Respondents also allege that Ground Three asserts non-cognizable claims. Petitioner filed a Reply urging the Court to find that the PWHC is timely and stating that in the interests of justice and fair play, the Court should review the merits of his claims. (Doc. 19).

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure, this matter was referred to Magistrate Judge Markovich for a Report and Recommendation. The undersigned finds that Petitioner's PWHC is untimely and that Petitioner has not shown that he is entitled to equitable tolling. Accordingly, the Magistrate Judge recommends that the District Court deny the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Trial, Sentencing, and Appeal

On May 21, 2004 a Cochise County Superior Court jury found Petitioner guilty of first degree murder, kidnapping, and tampering with physical evidence. (Doc. 15 Ex. A).[4,5] On July 15, 2004 Petitioner was sentenced to concurrent terms of 28 years for kidnapping and 25 years for first degree murder, and a consecutive term of 4.5 years on the tampering with physical evidence charge. (Doc. 15 Ex. F at 114–115, 122).

The Arizona Court of Appeals ("COA") summarized the facts of the case as follows:

> Sometime in late September or early October 2003, the victim, [J.D.], visited Mendoza's home where he lived with his girlfriend, Shelly Van Camp and another couple, Ruth Gray and Jacob Payne. During the evening, a dispute arose between

---

[3] *Blakely v. Washington*, 542 U.S. 296 (2004); *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

[4] All exhibit numbers refer to the exhibits attached to Respondents' Answer. (Doc. 15). Page numbers refer to the page of the document as filed in CM/ECF.

[5] Petitioner was indicted in one case for the murder and kidnapping charges and a separate case for the tampering with physical evidence charge. The two cases were consolidated for trial.

> [the victim] and Van Camp, and Van Camp asked Mendoza and Payne to "beat [the victim] up, but don't kill her." Mendoza and Payne lured [the victim] into the bathroom and bound her wrists, ankles, and mouth. Van Camp and others in the home heard [the victim] screaming for help. Then, Van Camp heard a loud "bang . . . like [a] head [hit[ting] the ground really, really hard," and [the victim's] screaming stopped. Later that night, Mendoza and Payne wrapped [the victim's] body, still bound, in a blanket and carried it out the back door of the home and over a fence. Payne waited for what "seemed to be hours" while Mendoza dragged [the victim's] body out of sight and buried it.
>
> In mid-November 2003, the remains of [the victim's] body were discovered approximately four hundred feet behind Mendoza's home. An assistant Cochise County medical examiner autopsied the remains and concluded in his report that "[t]he decedent died of homicidal violence of undetermined etiology." In late November 2003, the examiner released the remains to [the victim's] brother who had them cremated. Prior to trial, Mendoza filed a motion to dismiss the murder charge based on the state's failure to preserve [the victim's] remains. The trial court denied the motion.

(Ex. B at 9–10).

Following his conviction, Petitioner sought review in the Arizona COA. (Ex. C). Appointed counsel filed a brief presenting three issues for review: (1) the trial court abused its discretion by failing to grant Petitioner's motion to dismiss; (2) the trial court erred as a matter of law by failing to grant Petitioner's motion to preclude testimony; and (3) the trial court erred as a matter of law by failing to grant Petitioner's motion to preclude the DNA evidence. On November 30, 2006, the COA found no reversible error and affirmed Petitioner's convictions and sentences. (Ex. B).[6]

---

[6] In its decision, the COA stated Petitioner was sentenced to life in prison on the first degree murder charge. (Ex. B at 8). Petitioner filed a motion to correct the memorandum decision, noting that he was actually sentenced to 25 years on the murder conviction. (Ex. F). The COA ordered the State to respond to the trial court's imposition of an illegal sentence and the State's failure to raise this issue at trial or on appeal. (Ex. G). In its response, the State noted that the punishment for first degree murder is death or life imprisonment, with or without the possibility of parole after 25 years, and requested the COA modify the trial court's sentencing order to reflect a life sentence with the possibility of parole after 25 years. *Id.* at 128. On April 12, 2007 the COA issued a corrected memorandum decision restating its November 30, 2006 decision, correcting the first paragraph to state that Petitioner was sentenced to 25 years day-for-day on the murder conviction, and adding a footnote that although the sentence imposed for the murder conviction was not authorized by statute and the trial court was without authority to impose it, because the State failed to raise the issue below or on cross-appeal to the COA, the COA had no jurisdiction to correct an illegal sentence. (Ex. H at 133–134).

On May 21, 2007 Petitioner's counsel filed a petition for review to the Arizona Supreme Court. (Ex. I). Counsel presented two issues for review: (1) whether the State's bad faith actions throughout the case required a dismissal with prejudice; and (2) whether the State's repeated failure to provide the defense with proper disclosure and failure to follow the rules warranted a new trial. On October 31, 2007 the Arizona Supreme Court denied review.[7]

The COA issued its mandate on January 7, 2008. (Ex. J). Petitioner did not seek review in the United States Supreme Court.

**B.  First Petition for Post-Conviction Relief**

On January 29, 2008, Petitioner initiated proceedings in Cochise County Superior Court for Rule 32 post-conviction relief ("PCR").[8] (Ex. K). Appointed counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating that she had searched the record but could find no issues meriting post-conviction review, and requesting that the court search for fundamental error and grant Petitioner leave to file a pro se petition. (Ex. L). On September 17, 2008 Petitioner filed a pro per petition alleging: (1) ineffective assistance of appellate counsel for failing to "federalize" the issues on appeal; (2) prosecutorial misconduct for failing to comply with disclosure obligations; and (3) the state rules were applied in a way that denied Petitioner's right to present a complete defense and effective assistance of counsel. (Ex. M).[9]

On October 7, 2008 the trial court issued its order dismissing the petition and finding that no claim presented a material issue of fact or law that would entitle Petitioner to relief.

---

[7] *See* Arizona Court of Appeals Division II docket for 2 CA-CR 2004-0253 and 2 CA-CR 2004-0254

[8] The Arizona Rules of Criminal Procedure were amended effective January 20, 2020. New Rule 32 applies to defendants convicted after a trial or a contested probation violation hearing, and new Rule 33 applies to pleading defendants and defendants who admitted a probation violation or had an automatic probation violation. Because Petitioner's state court actions were filed prior to January 20, 2020 and he had no state court action pending at the time the new rules went into effect, former Rule 32 applies to Petitioner's case and the Court will cite to former Rule 32 throughout this opinion. *See* Arizona Supreme Court Order R-19-0012, available at:
https://www.azcourts.gov/rules/Recent-Amendments/Rules-of-Criminal-Procedure

[9] The poor quality of photocopy makes the petition illegible; however, the Court lists these issues as the trial court stated them in its order (Ex. N).

(Ex. N). The court specifically found that Petitioner's prosecutorial misconduct claim was precluded under Rule 32.2(a) because, although framed somewhat differently, it was presented and decided on direct appeal. *Id.* at 83–84. The court further found that Petitioner failed to adequately explain the remaining two claims and did not state a colorable claim for relief. *Id.* at 84.

On November 3, 2008 Petitioner filed a petition for review in the Arizona COA. (Ex. O). On April 29, 2009 the COA issued its decision granting review and denying relief. (Ex. P). The court stated that the trial court "denied relief in a detailed and thorough minute entry that clearly identified [Petitioner's] arguments and correctly ruled on them in a manner that will allow this court and any future court to understand its resolution." *Id.* at 113. The COA therefore adopted the trial court's ruling.

On May 21, 2009 Petitioner filed a petition for review to the Arizona Supreme Court (Ex. Q), which the Court denied on September 21, 2009.[10]

On October 15, 2009 the COA issued its mandate. (Ex. R). Petitioner did not seek review in the United States Supreme Court.

**C. Second Petition for Post-Conviction Relief**

On March 8, 2012 Petitioner filed a second notice of PCR in Cochise County Superior Court. (Ex. S).[11] Appointed counsel filed an *Anders* brief stating that he was unable to find any claims for relief and requested that the court search the record for fundamental error and grant Petitioner leave to file a pro se petition. (Ex. U at 3–4). On November 21, 2012, after Petitioner failed to timely file a pro se supplement, the trial court issued its order dismissing the pro se petition and denying relief. (Ex. U at 6). The court found that the six issues listed in Petitioner's notice of PCR were presented "in conclusory and sometimes vague terms" and were without sufficient support to allow the court to address them. *Id.* at 7. The court concluded that Petitioner had presented nothing to raise a material issue of fact or law that would entitle him to PCR.

---

[10] *See* Arizona Court of Appeals Division II docket for 2 CA-CR 208-0365-PR
[11] This notice is not included in the record before this Court but is referenced in the trial court's order.

Petitioner did not file a petition for review in the Arizona COA.

### D. Third Petition for Post-Conviction Relief

On May 12, 2015 Petitioner filed his third notice of PCR in Cochise County Superior Court, alleging newly discovered facts and evidence. (Ex. V at 57–59). Appointed counsel filed a brief stating that she could find no colorable claims for relief and requesting that the court allow Petitioner to file a pro se petition. (Ex. T at 143).[12] Petitioner filed his petition on November 10, 2015 asserting multiple claims of ineffective assistance of trial counsel, as well as a claim that counsel on his first Rule 32 proceeding was ineffective for failing to raise the ineffectiveness of trial counsel claims. (Ex. V).

On March 30, 2016 the trial court issued its order dismissing Petitioner's third PCR petition. (Ex. T).[13] The court specifically found that Petitioner's claims were waived and precluded under Rule 32.2(a)(3) because they could have been raised previously. *Id.* at 146–147. And, although Petitioner asserted his claims were brought pursuant to Rule 32.1(e), newly-discovered evidence, in an apparent effort to avoid preclusion, IAC claims fall under Rule 32.1(a). *Id.* at 145–146. The court further found that the claims were without merit and Petitioner failed to state a colorable claim. *Id.* at 147–157. The court therefore concluded that Petitioner's claims were "in all likelihood, precluded under Rule 32.2, and in any event none of his claims presents a material issue of fact or law which would entitle defendant to post-conviction relief." *Id.* at 157–158.

On May 9, 2016 Petitioner filed a petition for review in the Arizona COA requesting review of the trial court's decision for fundamental error and an abuse of discretion. (Ex. Z). On October 5, 2016 the COA issued its decision granting review and denying relief. (Ex. AA). The court found that Petitioner's claims arose under Rule 32.1(a) and were therefore precluded and barred as untimely. *Id.* at 104. The court further rejected Petitioner's argument that the trial court erred in concluding that he was not entitled to

---

[12] This notice is not included in the record before this Court but is referenced in the trial court's order.

[13] After Petitioner filed an untimely reply to the State's response to his third PCR petition (Ex. X), the trial court issued an order noting that it had read the reply but nothing in it would cause the court to reconsider its decision. (Ex. Y). The court therefore reaffirmed its March 30, 2016 decision and order.

- 6 -

effective assistance of PCR counsel pursuant to *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), because *Martinez* did not alter established Arizona law that a non-pleading defendant is not constitutionally entitled to effective counsel in post-conviction proceedings.

On December 27, 2016 Petitioner filed a petition for review to the Arizona Supreme Court,[14] which the court denied on May 17, 2017. (Ex. BB).

On August 1, 2017 the COA issued its mandate. (Ex. CC). Petitioner did not seek review in the United States Supreme Court.

### E.  Habeas Petition

On July 16, 2018 Petitioner filed his PWHC in this Court. (Doc. 1). Petitioner alleges four grounds for relief but states that "essentially, only a single ground is presented for relief here. All the rest is corollary information in support of that single ground." *Id.* at 6. Petitioner's main argument is "whether a conviction can stand in a murder case where the state cremated the victim before the trial, allowing the defense no opportunity to independently examine the corpse, and intentionally concealing the fact of cremation for months." *Id.* Petitioner alleges the PWHC was timely filed after the COA issued its mandate in Petitioner's third PCR proceedings and therefore AEDPA's statute of limitations does not apply. *Id.* at 11. Petitioner requests that the Court dismiss his case with prejudice, vacate the judgment, conviction, and sentence, and remand for a new trial.

Respondents contend that the PWHC is untimely and that Petitioner has not argued or shown that he is entitled to equitable tolling. (Doc. 15). Respondents also allege that Petitioner's sentencing claim in Ground Three is non-cognizable because it is too vague and Petitioner fails to explain how the state courts erred, and that the DNA claim in Ground Three is non-cognizable because habeas relief is not available for state court rulings on the admissibility of evidence. Finally, Respondents state that even if the petition were timely, Petitioner's claims are expressly procedurally defaulted without excuse.

For the reasons stated below, the undersigned finds that the PWHC is untimely and thus not properly before this Court for review. Accordingly, the undersigned recommends

---

[14] *See* Arizona Court of Appeals Division II docket for 2 CA-CR 2016-0228-PR

that the District Court deny and dismiss the Petition with prejudice.

## II.    STATUTE OF LIMITATIONS

### A.  Timeliness

As a threshold matter, the Court must consider whether Petitioner's PWHC is barred by the statute of limitations. *See White v. Klizkie*, 281 F.3d 920, 921–22 (9th Cir. 2002). The writ of habeas corpus affords relief to persons in custody pursuant to the judgment of a state court in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2241(c)(3), 2254(a). Petitions for habeas corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2244. The AEDPA mandates that a one-year statute of limitations applies to applications for a writ of habeas corpus by a person in state custody. 28 U.S.C. § 2244(d)(1). Section 2244(d)(1) provides that the limitations period shall run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *Shannon v. Newland*, 410 F.3d 1083 (9th Cir. 2005).

The other subsections being inapplicable here, Petitioner must have filed his habeas petition within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *see also McQuiggin v. Perkins*, 133 S. Ct. 1924, 1929 (2013). The Ninth Circuit has held that when an Arizona defendant does not file a petition for review in the Arizona Supreme Court on direct review, his "direct appeal was final. . . [on] the

date that he allowed his time for seeking review in the [Arizona] Supreme Court to expire." *Hemmerle v. Schriro*, 495 F.3d 1069, 1073–74 (9th Cir. 2007); *Gonzalez v. Thaler*, 132 S. Ct. 641, 656 (2012). If the petitioner does seek direct review from the state's highest court but does not file a petition for a writ of certiorari with the United States Supreme Court, the conviction becomes final when the time for filing such a petition elapses. *Bowen v. Roe*, 188 F.3d 1157, 1158–59 (9th Cir. 1999) ("the period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition."); *Jimenez v. Quarterman*, 555 U.S. 113, 120–21 (2009); *McMonagle v. Meyer*, 766 F.3d 1151, 1156 (9th Cir. 2014).

Petitioner was sentenced on July 15, 2004 and timely filed a direct appeal. On November 30, 2006 the COA issued its decision affirming Petitioner's convictions and sentences. On April 12, 2007 the COA issued a corrected memorandum decision, again affirming Petitioner's convictions and sentences. Petitioner filed a petition for review by the Arizona Supreme Court, which was denied on October 31, 2007. Petitioner had 90 days from that date to seek a writ of certiorari in the United States Supreme Court. *See Bowen*, 188 F.3d at 1159. Because no petition for certiorari was filed in the United States Supreme Court, Petitioner's judgment became final on January 29, 2008 within the meaning of 28 U.S.C. § 2244(d)(1)(A). Thus, absent any tolling, the one-year limitations period would have commenced on January 29, 2008 and expired one year later on January 29, 2009. *See Bowen*, 188 F.3d at 1159 ("when a petitioner fails to seek a writ of certiorari from the United States Supreme Court, the AEDPA's one-year limitations period begins to run on the date the ninety-day period defined by Supreme Court Rule 13 expires").

**B. Statutory Tolling**

The one-year limitation period under AEDPA is statutorily tolled during the time in "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Lott v. Mueller*, 304 F.3d 918, 921 (9th Cir. 2002). An application for state PCR is

"'*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings[,]" including "the time limits upon its delivery . . ." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). If a state court rejects a petitioner's PCR petition as untimely, it cannot be "properly filed" and the petitioner is not entitled to statutory tolling. *Allen v. Sibert*, 552 U.S. 3, 6–7 (2007) ("Whether a time limit is jurisdictional, an affirmative defense, or something in between, it is a 'condition to filing[.]'"); *Pace v. DiGuglielmo*, 544 U.S. 408, 417–418 (2005) (holding that "time limits, no matter their form, are 'filing' conditions").

If a petitioner files an application after the generally applicable state time limit, the application may nonetheless be considered "properly filed" if it fits within any exception to that limit. *Pace*, 544 U.S. at 413. However, the existence of exceptions to the state's timely filing requirements does not prevent a late application from being deemed improperly filed when the application does not fit within any exceptions to the time limit. *Id.* at 408. As the Supreme Court held in *Pace*, "[w]hen a post-conviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)." *Id.* at 414 (internal brackets and quotation marks omitted). In so holding, the Court reasoned that:

> In common understanding, a petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more "properly filed" than a petition filed after a time limit that permits no exception. The purpose of AEDPA's statute of limitations confirms this commonsense reading. On petitioner's theory, a state prisoner could toll the statute of limitations at will simply by filing untimely state postconviction petitions. This would turn § 2244(d)(2) into a de facto extension mechanism, quite contrary to the purpose of AEDPA, and open the door to abusive delay.

*Id*. at 413. Under the Arizona PCR statute and corresponding procedural rule, a "proceeding is commenced by timely filing a notice of post-conviction relief with the court in which the conviction occurred." Ariz. R. Crim. P. 32.4(a); *see also* Ariz. Rev. Stat. § 13–4234(A) (a PCR "proceeding is commenced by timely filing a notice of post conviction relief with the clerk of the court in which the conviction occurred"). Thus, the time limit for filing a notice of PCR under Rule 32.4(a) "places a limit on how long a prisoner can

wait before filing a postconviction petition." *Allen*, 552 U.S. at 6.

In Arizona, post-conviction review is pending once a notice of PCR is filed, even though the petition is not filed until later. *Isley v. Arizona Department of Corrections*, 383 F.3d 1054, 1056 (9th Cir. 2004). An application for state PCR remains pending "until it has achieved final resolution through the State's post-conviction procedures." *Carey v. Saffold*, 536 U.S. 214, 220 (2002). State law determines the conclusion of collateral review and thus, state law also determines the conclusion of statutory tolling under the AEDPA. *See Hemmerle*, 495 F.3d at 1077. "[W]hen the Arizona Court of Appeals grants review of the trial court's decision on a petition for post-conviction relief but denies relief, and the petitioner does not seek further review, the post-conviction proceeding is pending until the date the appellate court issues its mandate." *Wells v. Ryan*, 2015 WL 9918159, at *9 (D. Ariz. Aug. 13, 2015), *report and recommendation adopted*, 2016 WL 319529 (D. Ariz. Jan. 27, 2016) (collecting cases and citing Ariz. R. Crim. P. 31.23 and 32.9(g)); *Ramon v. Ryan*, 2010 WL 3564819, *6 (D. Ariz. July 23, 2010) (same). However, where the petitioner does file a petition for review with the Arizona Supreme Court, "the collateral proceeding '[is] determined' . . . when the Arizona Supreme Court denie[s] [the] petition for review" and the statute of limitations begins to run again on the date that the court denies review. *Hemmerle*, 495 F.3d at 1077 (noting that after the Arizona Supreme Court denied review, "[t]here was nothing left for [the court] to do" and "nothing remained 'pending' for purposes of § 2244(d)(2)").

Here, Petitioner timely filed his first notice of PCR on January 29, 2008.[15] The trial

---

[15] *See* Ariz. R. Crim. P. 32.4(a)(2)(D) (in noncapital cases, "a defendant must file a notice no later than 90 days after the entry of judgment and sentence or no later than 30 days after the issuance of the order and mandate in the direct appeal, whichever is later"). Although Petitioner's notice was date-stamped as received by Cochise County Superior Court on February 11, 2008, Petitioner signed the notice on January 29, 2008. (Ex. K at 3–5). Evidently Petitioner's counsel had also filed a notice on January 10, 2008 and intended the notice to be filed in both of Petitioner's criminal cases, but because only one copy of the notice was sent, the court returned the notice to counsel. (Ex. K at 6–14). Regardless of whether Petitioner's notice of PCR was filed on January 10 or January 29, 2008, the undersigned finds that Petitioner timely commenced his PCR proceedings within 30 days of January 7, 2008, when the COA issued the mandate in Petitioner's direct appeal. To the extent that the PCR notice was not filed until February 11, 2008 (beyond the 30-day period), counsel filed an affidavit in support of the late notice (Ex. K), and it does not appear from the information before this Court that the superior court rejected the notice as

court denied PCR on October 7, 2008. Petitioner filed a petition for review with the Arizona COA, and on April 29, 2009 the COA issued its decision granting review and denying relief. Petitioner filed a petition for review with the Arizona Supreme Court, which the court denied on September 21, 2009. Thus, Petitioner's properly filed PCR application remained pending until September 21, 2009, when the Arizona Supreme Court denied review. *See Hemmerle*, 495 F.3d at 1077; *Lawrence*, 549 U.S. at 332. Petitioner had one year from that date to file his federal habeas petition. Accordingly, absent equitable tolling, the statute of limitations expired on September 21, 2010, making Petitioner's July 16, 2018 PWHC untimely by nearly eight years.

Unlike Petitioner's first PCR notice, Petitioner's second PCR notice was untimely filed. Petitioner filed his second PCR notice on March 8, 2012—two and a half years after the Arizona Supreme Court denied review of the first PCR petition, and plainly beyond the applicable limits set forth in Ariz. R. Crim. P. 32.4(a). *See*, *e.g.*, *Leacock v. Ryan*, 2016 WL 8255617, at *4 (D. Ariz. Nov. 16, 2016) (second PCR petition filed three and a half years after conclusion of of-right PCR proceedings was untimely), *report and recommendation adopted*, 2017 WL 588899 (D. Ariz. Feb. 14, 2017). As Petitioner's second notice of PCR was filed untimely under Arizona law, that is the end of the Court's inquiry as to whether the PCR petition was "properly filed" under AEDPA. *See Pace*, 544 U.S. at 414 ("When a post-conviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)."); *Trigueros v. Adams*, 658 F.3d 983, 988 (9th Cir. 2011) ("An untimely state petition is not 'properly filed' and does not trigger statutory tolling under AEDPA."); *Banjo v. Ayers*, 614 F.3d 964, 968 (9th Cir. 2010) ("An untimely petition . . . is not 'properly filed' pursuant to 28 U.S.C. § 2254(d)(2), and so it does not toll the statute of limitations."). Petitioner's untimely PCR proceedings therefore had no statutory tolling effect on AEDPA's statute of limitations, and the time period during which Petitioner

untimely.
Assuming the PCR notice was filed on or before January 29, 2008, the notice was filed before AEDPA's statute of limitations began to run. Even assuming, as Respondents state, that the statute of limitations began to run on January 29, 2008 and ran for 13 days until Petitioner filed his notice of PCR on February 11, 2008, it does not affect the undersigned's conclusion in this matter that the PWHC is untimely.

pursued his untimely second PCR petition through the state courts it not subject to statutory tolling.[16]

Furthermore, Petitioner filed his second notice of PCR *after* AEDPA's one-year limitations period had already expired. Once the federal statute of limitations has run, a collateral state action cannot revive it. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (state petition filed after the expiration of AEDPA's one-year period does not reinstate limitations period that ended before state petition was filed); *Leacock*, 2016 WL 8255617 at *4 ("Once the one-year AEDPA time limit has passed, a habeas petitioner cannot restart his federal time limit by filing an action in state court . . . There can be no tolling following the expiration of the limitation period because 'there is no period remaining to be tolled.'" (quoting *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000))); *see also Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004) ("A state court filing after the federal habeas filing deadline does not revive it."); *De Jesus v. Acevedo*, 567 F.3d 941, 943–944 (7th Cir. 2009) ("a state proceeding that does not begin until the federal year has expired is irrelevant[;]" thus, a "state court's order denying a request for collateral review (whether on the merits or for any procedural reason) does not require the

---

[16] "Only the time period during which a round of habeas review is pending tolls the statute of limitation; periods between different rounds of collateral attack are not tolled." *Banjo*, 614 F.3d at 968. The Ninth Circuit "employ[s] a two-part test to determine whether the period between the denial of one petition and the filing of a second petition should be tolled. First, we ask whether the petitioner's subsequent petitions are limited to an elaboration of the facts relating to the claims in the first petition. If the petitions are not related, then the subsequent petition constitutes a new round of collateral attack, and the time between them is not tolled. If the successive petition was attempting to correct deficiencies of a prior petition, however, then the prisoner is still making proper use of state court procedures, and habeas review is still pending. Second, if the successive petition was not timely filed, the period between the petitions is not tolled." *Id.* at 968–69 (internal quotations and citations omitted) (noting that because the court concluded the petition was untimely under the second prong of *King*, the court "need not determine whether the petition was a continuation of the first or the start of a second round"); *see also Hemmerle*, 495 F.3d at 1075 (explaining that when the court construes the new petition as part of the first round of collateral review, tolling applies if the petition was denied on the merits but not if the petition was deemed untimely). If a new claim is asserted in the second petition, then the second petition is considered a "new round," even if the second petition corrects deficiencies in the first petition. *Stancle v. Clay*, 692 F.3d 948, 955–56 (9th Cir. 2012) (finding that because the petitioner "did not limit his second petition to an elaboration of the facts and his second petition started a 'new round,' he is not entitled to statutory gap tolling for the [] days between his first and second superior court petitions."). Here, because the undersigned finds that Petitioner's second PCR petition was untimely, Petitioner is not entitled to tolling for the periods between the first petition and the second petition.

exclusion, under 28 U.S.C. § 2244(d)(2), of time that passed before the state collateral proceeding began."). Statutory tolling is therefore unavailable to render the PWHC petition timely.[17]

In sum, the undersigned finds that Petitioner was only entitled to statutory tolling of ADEPA's one-year statute of limitations until he completed one full round of collateral review in the state courts. That first round of collateral review concluded on September 21, 2009, and Petitioner had one year from that date to file his federal habeas petition. The statute of limitations continued to run uninterrupted until it expired one year later on September 21, 2010. Petitioner's second and third untimely PCR proceedings did not toll, pause, or re-start the statute of limitations; once the federal statute of limitations has run, a collateral state action cannot revive it. Accordingly, absent equitable tolling, the statute of limitations expired on September 21, 2010, making Petitioner's July 16, 2018 PWHC untimely.

---

[17] Petitioner's third PCR proceedings also had no effect on the statute of limitations. While a petitioner is entitled to statutory tolling during the time that he is seeking "one full round" of collateral review in state court, *Carey*, 536 U.S. at 220–222, untimely successive PCR petitions do not toll the limitations period. *See* 28 U.S.C. § 2244(d)(2); Ariz. R. Crim. P. 32.1(d)–(h), 32.4(a) (successive PCR proceeding is limited to certain claims); *Artuz*, 531 U.S. at 8. Thus, where the third PCR notice was untimely and not exempt from state preclusion rules, the notice was not properly filed, and Petitioner is not entitled to statutory tolling for the time that his third PCR proceedings were pending.

Even if the state court provides alternative grounds for disposing of a PCR petition, a ruling that the action was untimely precludes it from being "properly filed" and tolling the limitations period. *Carey v. Saffold*, 536 U.S. 214, 225–26 (2002); *Parker v. Ryan*, 2016 WL 11431549, *7 (D. Ariz. June 8, 2016) (same), *report and recommendation adopted*, 2016 WL 4190737 (D. Ariz. Aug. 9, 2016); *see also Szabo v. Ryan*, 2011 WL 5439006, *8 (D. Ariz. Oct. 24, 2011) ("The state court's interpretation of whether a state petition is untimely governs whether a post-conviction process has become final for purposes of AEDPA . . . ."), *aff'd*, 571 F. App'x 585 (9th Cir. 2014). Here, the trial court specifically found that Petitioner's claims in his third PCR proceeding were waived and precluded. The court also addressed the merits of Petitioner's claims and found that Petitioner failed to present any colorable claims for relief. On review, the Arizona COA agreed that Petitioner's claims were precluded, and specifically stated that the claims were barred as untimely under Ariz. R. Crim. P. 32.4(a). Thus, that the trial court also addressed the merits of Petitioner's claims has no effect on whether the third PCR petition was "properly filed" under AEDPA for purposes of statutory tolling. *See Pace*, 544 U.S. at 414; *Carey*, 536 U.S. at 225–26; *see also Curiel v. Miller*, 830 F.3d 864, 869 (9th Cir. 2016) (for purposes of applying the "properly filed" requirement of § 2244(d), the federal courts look to the "last reasoned decision" of the state courts).

Finally, as with Petitioner's second PCR notice, the third PCR notice was filed years after AEDPA's one-year statute of limitations had already expired. Thus, there could be no tolling of the statute of limitations because there was no time remaining to be tolled.

- 14 -

## C. Equitable Tolling

In certain limited circumstances, AEDPA's one-year filing deadline may be equitably tolled. *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010). A petitioner is entitled to equitable tolling if he can demonstrate "'(1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstances stood in his way'" to prevent him from timely filing a petition. *Id.* at 2562 (quoting *Pace*, 544 U.S. at 418). An extraordinary circumstance is one that is "beyond a prisoner's control [that] make[s] it impossible to file a petition on time." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) (citations omitted). And, to justify equitable tolling, the extra ordinary circumstance must be attributable to "external forces [] rather than a petitioner's lack of diligence[.]" *Id.* Further, a petitioner must establish a "causal connection" between the extraordinary circumstance and his failure to file a timely petition. *See Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1060 (9th Cir. 2007). "'[T]he threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.'" *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (quoting *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002)).

Here, the undersigned finds that Petitioner has failed to meet his burden. Petitioner first alleges that his PWHC is timely pursuant to statutes and the rules of procedure. (Doc. 19 at 3). As explained above, Petitioner is incorrect. Petitioner also alleges that he has made every effort to exhaust his state remedies, and that due to his ignorance of the law, he has been relying on jailhouse lawyers to present his arguments to the courts. *Id.* at 3–4. While Petitioner further contends that he is entitled to equitable tolling because he has been "as diligent as it is possible to be" in pursuing his rights over the years, that contention is belied by the record in this case. (Doc. 19-1 at 2, 4). Petitioner waited two and a half years after the Arizona Supreme Court denied review of his first PCR petition before filing his second notice of PCR. Following the trial court's dismissal of the second PCR proceeding, Petitioner waited another two and a half years before filing his third notice of PCR. This delay between each state petition can hardly be considered diligent.

While the undersigned recognizes that Petitioner has filed multiple petitions for

relief in the state courts since his conviction, Petitioner does not demonstrate any extraordinary circumstances that prevented him from timely filing his federal habeas petition. Petitioner was entitled to one full round of collateral review in the state courts, and once that review concluded on September 21, 2009 when the Arizona Supreme Court denied review of his first Rule 32 petition, Petitioner had one year to file his federal habeas petition. The statute of limitations expired on September 21, 2010, but Petitioner did not file his PWHC until July 16, 2018—nearly eight years after his collateral review proceedings concluded. As the undersigned explained above, Petitioner's second and third notices of PCR did not toll the statute of limitations, and these successive PCR petitions do not constitute "extraordinary circumstances" that prevented Petitioner from timely filing his federal habeas petition. *See Biggs v. Duncan*, 339 F.3d 1045, 1048 n. 2 (9th Cir. 2003) ("A petitioner must be careful to timely file in federal court after he concludes his first full round of state collateral review, lest he run afoul of the statute of limitations. To avoid that circumstance, a petitioner like Biggs could have timely filed a federal petition for habeas corpus after his first round was completed, then requested the district court to exercise its discretion to stay the petition until he fully exhausted his Round Two claims.") (citing *James v. Pliler*, 269 F.3d 1124, 1126-27 (9th Cir. 2001)).

The record before the Court is devoid of any evidence to demonstrate that Petitioner is entitled to equitable tolling, and Petitioner has not adequately shown why he is without fault for failing to timely file his PWHC. And, in any event, Petitioner's pro se status, indigence, limited legal resources, ignorance of the law, or lack of representation during the applicable filing period do not constitute extraordinary circumstances justifying equitable tolling. *See*, *e.g.*, *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006); *see also Ford v. Pliler*, 590 F.3d 782, 789 (9th Cir. 2009) ("A petitioner's misunderstanding of accurate information cannot merit relief, as equitable tolling requires a petitioner to show that some extraordinary circumstance[ ] beyond [his] control caused his late petition, and this standard has never been satisfied by a petitioner's confusion or ignorance of the law alone."); *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) ("To apply

the doctrine in extraordinary circumstances necessarily suggests the doctrine's rarity, and the requirement that extraordinary circumstances stood in his way suggests that an external force must cause the untimeliness, rather than . . . merely oversight, miscalculation or negligence on the petitioner's part . . . .") (internal quotation marks and brackets omitted)). Simply stated, Petitioner cannot demonstrate any extraordinary circumstances that prevented him from timely filing the petition.

Accordingly, the undersigned finds that Petitioner is not entitled to equitable tolling and the PWHC is untimely.

## III.    RECOMMENDATION

Based on the foregoing,

**IT IS HEREBY RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED.

**IT IS FURTHER RECOMMENDED** that a certificate of appealability and leave to proceed in forma pauperis on appeal be DENIED because dismissal of the Petition is justified by a plain procedural bar and reasonable jurists would not find the procedural ruling debatable.

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). No replies shall be filed unless leave is granted from the District Court. If objections are filed, the parties should use the following case number: **CV-18-347-FRZ**

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review. The Clerk of the Court shall send a copy of this Report and Recommendation to all parties.

Dated this 27th day of August, 2020.

Eric J. Markovich
United States Magistrate Judge

- 17 -